IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM H. PAYNE and
ARTHUR R. MORALES,

        Plaintiffs,

vs.                                                       CIVIL NO.  97-266 MCA/LFG

NATIONAL SECURITY AGENCY,

        Defendant.

## **RECOMMENDATION TO ORDER GARNISHMENT**[1]

On March 25, 2008, the Court conducted a hearing on the government's objections to claimed exemptions [Doc. 135]. The hearing was conducted pursuant to the Court's Order of Reference [Doc. 141] issued by the Honorable M. Christina Armijo. Defendant, United States of America, Garnishor, was present, as was the Garnishee, Sandia Laboratory Federal Credit Union. The Debtors, William H. Payne ("Payne") and Arthur R. Morales ("Morales"), failed to appear for the hearing and did not notify the Court of any conflict that would prevent them from appearing.

### **Background**

In 1997, Payne and Morales filed this lawsuit against the Director of the National Security Agency and others under the Freedom of Information Act. They sought release of various allegedly secret communications related to the Gulf War. As a result of violations of various orders and

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed. Objections must be filed no later than April 15, 2008.

directives, both Payne and Morales were sanctioned by the referral magistrate judge, the Honorable Don J. Svet [*see* Docs. 37, 41].

On October 27, 1999, the trial judge, the Honorable Santiago E. Campos, determined that Defendant was entitled to summary judgment as a matter of law and dismissed the lawsuit. On December 13, 2000, the Tenth Circuit Court of Appeals affirmed the District Court's decision. No application for certiorari was filed, and the Circuit Court's affirmance brought this lawsuit to an end.

Notwithstanding that this lawsuit was dismissed and the dismissal affirmed in 2000, seven years after the case was closed, in mid-2007, Payne and Morales filed new pleadings in this cause number in an apparent attempt to revive the litigation. The Court was again required to address the pleadings filed by Payne and Morales.

In order to fully understand the deleterious impact of Payne and Morales' conduct in the present lawsuit, their history of filing abusive and frivolous lawsuits in state and federal courts must be noted. The 1997 lawsuit was only one of multiple lawsuits Payne and Morales filed in state and federal courts against various governmental agencies, United States national laboratories, governmental officials, federal judges, state judges, U.S. Attorneys, Assistant U.S. Attorneys, private attorneys, corporations, corporate officials, officers, directors and employees of corporations, and numerous others. For a history of their litigation activities in the District of New Mexico, including both state and federal court lawsuits, see attachments "B" and "C" to document number 92, filed herein.

Due to their history of abusive and frivolous lawsuits in state courts, Payne and Morales were enjoined from filing any *pro se* pleadings in any New Mexico state court.[2] Similarly, the Honorable William F. Downes, Chief Judge of the United States District Court in the District of Wyoming, sitting in New Mexico by designation, also enjoined Payne and Morales from filing new cases and from reasserting in pending cases any previously dismissed claims in the U.S. District Court unless Payne and Morales complied with the requirements outlined in the Court's injunction.[3]

The 2007 litigation efforts in the present lawsuit resulted in the issuance of an Order to Show Cause. The Court's Order stated in part:

> The filing of repetitive, frivolous and vexatious lawsuits congests court dockets, imposes substantial litigation costs and attorney fees on individuals who are required to respond, taxes judicial resources, and diverts the Court's attention from meritorious litigation.
>
> * * *
>
> [P]ayne and Morales are directed to show cause, if any they have, why the undersigned magistrate judge should not certify facts pursuant to 28 U.S.C. § 636(b)(1)(C) and issue a report and recommendation to the Chief Judge pursuant to 28 U.S.C. § 636(b)(1) recommending that sanctions against Payne and Morales be imposed. Plaintiffs are directed to show cause, if any they have, why their recent pleadings and papers [Docs. 81, 82, 84, 85 and 91] should not be denied or stricken, as this case was long ago closed. Payne and Morales are directed to file their written responses and supporting affidavits no later than July 25, 2007.

[Doc. 92, p.3].

---

[2] Payne v. Brennan et al., 2001-07794 (on May 16, 2002, State District Court Judge Ken Brown entered an injunction prohibiting William Payne from filing lawsuits in New Mexico courts without representation of licensed counsel); Morales & Payne v. Brennan et al., 2002-3425 (on July 8, 2002, State District Judge Robert H. Scott permanently enjoined Arthur Morales from filing any pleadings in state court unless represented by counsel). In both of these cases, Payne and Morales were deemed "vexatious litigants" who impair, impede, delay and obstruct the administration of justice.

[3] Filing restrictions were authorized by Tripati v. Beaman, 878 F.2d 351 (10th Cir. 1989).

Neither Payne nor Morales complied with the Court's directive. They did not file a response to the Court's Order to Show Cause, offer any rationale why the pleading should not be stricken or denied, or provide any reason why they should not be sanctioned for their abusive litigation practices. Neither sought an extension of time within which to comply with the Court's Order concerning a response. The time for filing a response elapsed.[4]

The district's local rule, D.N.M.LR-Civ. 7.1(b) provides that failure to respond constitutes consent to the proposed relief. By their inaction, Payne and Morales were deemed to have consented to having their pleadings stricken and sanctions opposed. While the Court concluded that relief was appropriate under D.N.M.LR-Civ. 7.1(b), it nonetheless reviewed Payne and Morales' conduct in this case on the merits.

On July 31, 2007, the Court issued a Report and Recommendation [Doc. 95] outlining Payne and Morales' multi-year campaign of filing abusive, repetitive and frivolous lawsuits. Notwithstanding the dozens of lawsuits initiated by these *pro se* litigants, the Court observed that they were not successful in any single claim brought before any judicial forum. Each and every lawsuit they filed was dismissed. Moreover, both state and federal judges deemed them "frivolous litigators" and censured and sanctioned them. In its 2007 Report, this Court further noted their many lawsuits served only to harass defendants, congest court dockets, impose financial and time burdens on defendants, and improperly burden the judicial system.

---

[4]Subsequent to the deadline, Payne and Morales filed a motion to "Void Order of Reference for Lack of Jurisdiction" [Doc. 93] and filed a pleading captioned "Mandatory Judicial Notice and Authorities to Void Order of Reference For Lack of Jurisdiction" [Doc. 94]. Neither of these pleadings responded to the Court's Order to Show Cause, nor did Payne or Morales submit supporting affidavits as required by the Court. Their "motion to void" failed to address the Court's directive to show cause why their pleadings should not be stricken or denied.

4

The orders, directives and sanctions previously imposed had no effect curbing Payne's and Morales' abusive litigation conduct.

In recommending that sanctions be imposed, the Court discussed its authority to control its docket and conducted an appropriate analysis under Ehrenhaus v. Reynolds, 965 F.2d 916, 920 (10th Cir. 1992) and Meade v. Grubbs, 841 F.2d 1512, 1520-21 (10th Cir. 1988). The Court recommended the imposition of substantial sanctions in the amount of $10,000 each against Payne and Morales. [Doc. 95.] The Court reasoned in part:

> In reviewing the dozens of cases filed by these litigants, it is apparent that literally hundreds of thousands of dollars of attorney fees and costs have been spent to protect defendants from these Plaintiffs' frivolous lawsuits. Unless significant sanctions are imposed and collections efforts pursued by the United States, there is no hope that other defendants will be free from Payne's and Morales' abusive lawsuits, or that courts will not be further burdened with their prolixity and frivolousness.

[Doc. 95, p. 11]. The Court further observed:

> It is clear that this lawsuit was long ago dismissed by a court acting within its jurisdiction, and that the dismissal was affirmed. It is further clear that after being warned not to engage in frivolous litigation, Plaintiffs have again sought to raise the very issues which were dismissed and affirmed. Plaintiffs, in knowing violation that this lawsuit was dismissed and the dismissal affirmed, again filed frivolous pleadings. Their conduct was intentional, malicious and sanctionable and the undersigned magistrate judge recommends imposition of substantial financial penalties intended to prevent Plaintiffs from engaging in this conduct in the future.

[Doc. 95, p. 12].

In accordance with 28 U.S.C. § 636(b)(1), Payne and Morales were afforded ten days within which to file any written objections to the Court's Report and Recommendation, which specifically

5

provided that objections should be filed no later than August 17, 2007. The Report further explained that if no objections were filed, appellate review would not be allowed.

On August 17, 2007, Payne and Morales filed a 23-page set of objections, with attachments, to the Report and Recommendation. [Doc. 97.] After conducting a *de novo* review of the arguments raised by Payne and Morales, the District Court overruled the objections and, on August 27, 2007, adopted the Report and Recommendation, thereby imposing sanctions [Doc. 100].

### Garnishment Proceedings

Subsequently, Defendant National Security Agency sought to determine whether debtors Payne and Morales would voluntarily pay the sanctions. Both Payne and Morales declined. Thereafter, the government initiated formal garnishment procedures. [*See, e.g.,* Doc. 112.] Writs of garnishment were served on various financial institutions, and one, Sandia Laboratory Federal Credit Union, garnishee, answered that it, indeed, held funds belonging to Payne and funds belonging to Morales. [Doc. 131.]

In a filing in a separate docket, Morales et al. v. Baca, CIV 01-634 [Doc. 76], and later in affidavits filed in this case [Doc. 136, 137], Payne and Morales asserted that the package they received (including the writ of garnishment) either was deficient or did not actually include the "notice of garnishment and instructions for objecting to answer." Because of such assertions, the United States re-served, by certified mail, a copy of the form "Notice of Garnishment and Instructions for Objecting to the Answer." (*See* Declaration of Lois Agnes, Ex. A to government's Pre-Hearing Memorandum of Law [Doc. 143]). Attached to Ms. Agnes' declaration are copies of the letter sent to debtors, as well as postal receipts demonstrating receipt of the supplementary mailing.

The Federal Debt Collection Act does not require that the debtor be served with a particular document captioned "Notice of Garnishment and Instructions for Objecting to the Answer." 28 U.S.C. § 3205(c)(3) requires:

> (3) Service of Writ.  The United States shall serve the garnishee and the judgment debtor with a copy of the writ of garnishment and shall certify to the court that this service was made.  The writ shall be accompanied by–
>
> (A)  an instruction explaining the requirement that the garnishee submit a written answer to the writ; and
>
> (B)  instructions to the judgment debtor for objecting to the answer of the garnishee and for obtaining a hearing on the objections.

The declaration of Ms. Agnes shows that the debtors were served with a Writ of Garnishment and the Clerk's notice of post judgment garnishment and instructions on January 28, 2008. Moreover, even if a "notice of garnishment and instructions for objecting to the answer" was not included in the original service, any defect was cured by the re-service as attested to by Ms. Agnes.

It is abundantly clear from the exhibits submitted by the United States, including pages from Payne's website, www.prosefights.org, and Morales' letter to the Sandia Federal Credit Union, which was included in debtors' filing with the Court, that both Payne and Morales received the proper notices, were aware of the hearing, and failed to file any answer or objection, and failed to assert appropriate claims for exemption.

The Court finds that service of process was proper, and debtors' objections concerning service are overruled.

7

**Federal Debt Collection Procedures Act**

Under the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001, *et seq.* ("FDCPA"), the United States may garnish property in the hands of third parties to enforce a judgment debt. *See* 28 U.S.C. § 3205(a). Under federal law, property subject to garnishment includes community property. 28 U.S.C. § 3002(12). The Act provides, "Co-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the state in which property is located." 28 U.S.C. § 3205(a); *see also* 28 U.S.C. § 3010(a).

Therefore, the Court must look to New Mexico law, as the funds seized by the Garnishee (Sandia Federal Credit Union) are located in Albuquerque, New Mexico. Under New Mexico law, community property is subject to garnishment or execution for community debts. NMSA 1978 § 40-3-11. Community debts include debts incurred during marriage by either party subject to certain limited exceptions. There is no showing that any exemptions under the statute are applicable here. Thus, to the extent that Payne or Morales contend that some of the funds in their separate accounts represent wages earned by a spouse, or retirement funds of the spouse, they still constitute community property, and, under New Mexico law, may be used to satisfy community indebtedness.

The FDCPA allows individual debtors to elect to exempt property under 28 U.S.C. § 3014(a)(1) (property specified in the Bankruptcy Code at 11 U.S.C. § 522(d) or 28 U.S.C. § 3014(a)(2) (any property exempt under federal, state or local law). However, when a claim of exemption is filed, it is the burden of debtors to establish the applicability of exemptions claimed. In this case, neither debtor has properly filed any claim of exemption, and neither debtor appeared at the March 25, 2008 hearing to present evidence in support of the applicability of any exemption.

In the affidavits submitted by the Garnishee on behalf of the debtors, it is apparent that

Morales claims that the source of $11,018 in the funds of his credit union account was a distribution from a retirement account [Doc. 133, Affidavit of Arthur Morales]. However, the credit union's response to the Writ of Garnishment indicates that Morales had three deposits, totaling $24,921.75 as of the date of the answer. Letters sent to the credit union by Morales indicate that the funds may have been loans, savings or retirement funds. Given the separate deposits, it is apparent that funds, from whatever source, were co-mingled in the Morales' accounts. The accounts seized are sufficient to pay the $11,018 which the United States seeks to garnish from Morales.

The Affidavit of William H. Payne [Doc. 133] asserts that the source of $1,950 of the funds in one of his credit union accounts was a distribution from a traditional IRA. However, there were five deposit accounts attributed to Payne totaling $20,819.32 [Doc. 131, p. 3]. Payne further states that other funds in the account included $9,068 attributed to his wife's salary. These funds, from whatever source, were co-mingled. Payne has not shown the source of the other three deposits made to the account or that those funds are exempt.

New Mexico law provides that retirement benefits under the Public Employees Retirement Act ("PERA"), NMSA § 10-11-1, *et seq.*, are not subject to execution, levy, garnishment or other legal process. However, there is no showing that the funds at issue are retirement proceeds under PERA. Moreover, once retirement funds are paid, any exemption does not extend to deposits in the debtor's accounts. Kokoszka v. Belford, 417 U.S. 642, 651 (1974) (earnings are "limited to periodic payments of compensation and [do] not pertain to every asset that is traceable in some way to such compensation."), *reh'g denied,* 419 U.S. 886 (1974); Usery v. First Nat. Bank of Arizona, 586 F.2d 107, 109 (9th Cir. 1978); and United States v. Laws, 352 F. Supp. 2d 707, 713 (E.D. Va. 2004).

Neither Payne nor Morales filed a claim of bankruptcy and neither asserted an exemption under 11 U.S.C. § 522(d)(10) for payments under a pension plan. Moreover, while money in a pension plan is not subject to garnishment, once funds due a debtor under a pension plan are paid, they lose their exempt character. In re Cesare, 170 B.R. 37, 39 (Bankr. D. Conn. 1994).

The Clerk of the Court provided debtors with information regarding filing answers, claiming exemptions and requesting hearings. Notwithstanding the information provided to Payne and Morales, neither took appropriate action necessary to protect potentially existing rights.

## Recommendations

The Court recommends that the United States' objections to Payne's and Morales' purported claims of exemption be sustained.

The Court further recommends finding that neither Payne nor Morales filed a timely answer or carried his burden of proof to demonstrate applicability of any exemption. Accordingly, it is recommended that any purported claims of exemption be denied.

Finally, it is recommended that the Court enter an order authorizing garnishment of the funds sought by the United States.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge